IN RE ESTATE OF ADAM SEIBEL.

J. G. SHIFFLETT, Administrator, Appellant, v. R. E. JOHNSON, Treasurer of State, Appellee.

DECEMBER 14, 1928.

*J. G. Shifflett,* for appellant.

*John Fletcher,* Attorney-general, *C. J. Stephens,* Assistant Attorney-general, and *Albert H. Adams,* for appellee.

MORLING, J.—This case got into the district court under Sections 7335, 7336, Code of 1927, the first of which permits any person interested to file objections to appraisement, "on the hearing of which as an action in equity either party may produce evidence competent or material to the matters therein involved." The proceeding, being in equity, is triable here *de novo.* Section 7336 declares:

"If upon such hearing the court finds the amount at which the property is appraised is its value on the market in the ordinary course of trade, and the appraisement was fairly and in good faith made, it shall approve such appraisement; but if it finds that the appraisement was made at a greater or less sum than the value of the property in the ordinary course of trade, or that the same was not fairly or in good faith made, it shall

set aside the appraisement, appoint new appraisers and so proceed until a fair and good appraisement of the property is made at its value in the market in the ordinary course of trade.''

The following section provides for appeal to this court.

Five witnesses gave testimony in behalf of objectors. The evidence in behalf of the treasurer of state was the testimony of the three appraisers. Objectors' witnesses owned and operated land in the vicinity of, and had been familiar with, the land in question, some of them for many years. They were familiar with the subject of sales, of whether there were or were not sales of land in that neighborhood. It was conceded that the land rented for $3.00 per acre and two fifths of the crops. The house upon it had been burned, just before decedent's death, and had not been replaced. There is upon the farm a corncrib, of little value, ''some sheds, and a sort of granary, which leans, and a windmill.'' This granary, as we understand, is that referred to by one of the appraisers as a pole barn. This appraiser says:

''It has nothing you could call a roof. It hasn't very much value. The fences are just fair, around the outside; no cross fences, except the pasture, which is fenced in a zig-zag fashion, following the valley and touching the hillsides. I observed the stony and clay points on the hillsides; a very small amount of rock and gravel. The farm is 2½ miles off the main road to the south edge, and 3 miles to the buildings, and hilly stretch, and a creek to cross. I don't know much about the fertility of the soil. I know of no other farm in that vicinity that sold for anywhere near $125 per acre. I haven't appraised any farm in that vicinity. I don't know the circumstances about the sale of the Rollins farm, within a mile of Grinnell, at $90 per acre. That is all I have upon which to base my judgment. * * * The east 80 is quite rough and rolling, with draws and ditches, and a ditch runs the full length of it. It is foul with weeds, and very run down.''

It is eight miles from Grinnell.

Another witness says:

''It is a mixed soil, on the ridges fairly good, black, and down along the sloughs. Around the edges, it is very poor and

stony. If one was to tile out the sloughs, I presume it could all be cultivated."

He says there are "about 25 or 30 acres that can be tiled, with a couple of thousand dollars." It also appears that "the fertility is at low ebb, at the present. It has never been seeded, that I know of; it has always been cropped, and the crops were rather poor."

It is a fair inference from the testimony that very little in the way of crops has been produced. It appears from the testimony of the appraisers that they talked with the administrator, and told him that, in their opinion, "this farm was worth from $100 to $125 an acre, and at that time, he thought that was about right. Another appraiser says, about $120 to $125. They thought it was worth, in the ordinary course of trade, about $125 per acre, and appraised it at that figure. One of them was a lawyer, whose firm handled real estate; another was secretary of the local loan association, loaning money on city real estate; the third, an editor. It is evident that they knew nothing about the productivity of the land, and little or nothing about it, further than what they observed at the time of the appraisement, made on April 1, 1927. They appear to have based their judgment largely on their other appraisements and on their knowledge of values of land in the county generally. Nothing definite appears about sales of other land. Three of plaintiff's witnesses value the land at $75 to $80 per acre, one at $80 to $85, one at $75 to $85, and one at $90. The witnesses for the state treasurer adhere to their appraisement of $125 per acre.

We are of the opinion that the appraisement was made at a greater sum than the value of the property in the ordinary course of trade, and that it should have been set aside, and new appraisers appointed. The cause will be remanded, with instructions accordingly.—*Reversed.*

STEVENS, C. J., and EVANS, FAVILLE, DE GRAFF, and ALBERT, JJ., concur.