IN RE ESTATE OF JOHN SCHERF.

No. 47380.

(Reported in 38 N. W. 2d 578)

C. F. Neylan, of Elkader, and Alex Holmes, of Strawberry Point, for appellants.

Robert L. Larson, Attorney General, and Henry W. Wormley, Special Assistant Attorney General, for Iowa State Tax Commission, appellee.

BLISS, J.—John Scherf died testate September 17, 1947, leaving considerable personal and real property to his children, Adele Wehrkamp, William Scherf and Chris Scherf, the last two being administrators of the estate. Three farms are involved in this appeal. One, a 264-acre farm, occupied by William Scherf. Another, a 276-acre farm, occupied by Chris Scherf. The third, known as the Schulte farm, contained 360 acres.

Henry Lenth, Charles Meder and A. J. Johnson, the inheritance-tax appraisers of Clayton county, appraised these farms as of September 17, 1947, and filed their report thereof on January 22, 1948, fixing the valuations as follows:
the 264-acre farm was appraised at $210 an acre, or $55,440;
the 276-acre farm was appraised at $165 an acre, or $45,540;
the 360-acre farm was appraised at $125 an acre, or $45,000.

On February 10, 1948, William and Chris Scherf filed objections to the valuations fixed by the tax appraisers in their said

report, and alleged the market value in the ordinary course of trade of said farms was as follows:

the 264-acre farm ....................\$30,000;
the 276-acre farm ....................\$19,000; and
the 360-acre farm ....................\$26,000.

Mr. Neylan appeared for the objectors at the trial in the district court, and Mr. Wormley represented the Commission, which filed answer to the objections alleging the correctness of the appraisement and denying the alleged valuations of the objectors. The opinions of the witnesses for the objectors and for the Commission as to the market value per acre in the ordinary course of trade, of the three farms, on September 17, 1947, are as follows:

| For objectors | 264 acres | 276 acres | 360 acres |
|---|---|---|---|
| Larson | $140 | $100 | $ 80 |
| Connell | | | 75 |
| Hurley | 136 | 80 | 70 |
| Mueller | 125 | | |
| Eilers | 140 | | |
| Downey | | | 70 |
| Uriel | | | 70 |
| Heck | | | 70 |
| Zittergruen | 140 | 85 | |
| Kurdelmeier | 135 | 80 | |
| Henning | 130 | 80 | |
| | $946 | $425 | $435 |
| Average value an acre | $135.14 | $ 85.00 | $ 72.50 |
| For Commission | | | |
| Reimer | $250 | $150 | $135 |
| Meder | 210 | 165 | 125 |
| Johnson | 210 | 165 | 125 |
| | $670 | $480 | $385 |
| Average value an acre | $223.33 | $160.00 | $128.33 |

On April 30, 1948, the court filed its findings of fact, conclusions of law, order and judgment, fixing the per-acre appraisements as follows: the 264-acre farm at $200, the 276-acre farm at $140, the 360-acre farm at $72.50, and a 260-acre farm, not involved in this appeal, at $90. These findings, conclusions and judgment signed by the judge were entered in the proper judgment record that afternoon. The attorney for the objectors received a signed duplicate original of the judgment, findings and conclusions. Later, and without notice to the objectors or their attorney, the appraisement, both in the original findings and judgment and in the record entry thereof, of the 360-acre farm was changed from $72.50 an acre to $115 an acre. When the change was discovered the objectors filed a motion to reinstate the judgment as originally made and entered a nunc pro tunc order, as of April 30, 1948, fixing appraisement of the 360-acre farm at $115 an acre.

I. Under section 450.31 et seq., Code of 1946, the hearing on objections to inheritance-tax appraisements are had before the court, as an action in equity, and an appeal from the order of the court fixing the appraisement lies to this court. The review on appeal here is de novo.

The objectors and Adele Wehrkamp state that the questions presented by this appeal are the valuations of the three farms; the change of the judgment record by the clerk; and the authority and jurisdiction of the court to enter the nunc pro tunc order of May 18, 1948. The appeal is from the order and decrees of the court entered on April 30, 1948 and on May 18, 1948. They contend that the valuations of their witnesses are the fair and reasonable market values of these farms, and that the original valuation of the court of the 360-acre farm of $72.50 an acre is the market value thereof in the ordinary course of trade as provided by section 450.37, Code of 1946. They further contend that the clerk had no authority to change the record; that there was no evidence of any error or mistake on the part of the court in making the original order and decree; that no notice was given to the parties or their attorneys of any changes or intended changes; and there was no authority or jurisdiction in the court to make the nunc pro tunc order.

The six stated propositions upon which the objectors rely for reversal may be reduced to two: (1) That the order and decree of the court is contrary to and unsupported by the preponderance and greater weight of the evidence; (2) the court erred in making the nunc pro tunc order.

Our determination of the first proposition makes it unnecessary to pass upon the second proposition.

II. The Commission used as witnesses Mr. Meder and Mr. Johnson of the three inheritance-tax appraisers, who made the appraisements objected to. Mr. Lenth, the third appraiser, was not a witness. The only other witness who testified for the Commission was Mr. Reimer, a lawyer who owned some real estate. Mr. Meder had been an inheritance-tax appraiser in Clayton county for twenty-five years and Mr. Johnson had been such appraiser since 1936.

The district court set aside and reduced the appraisements on all of the farms. The reduction on the 276-acre farm was from $165 to $140 an acre, on the 264-acre farm from $210 to $200 an acre, and on the 360-acre farm, by the court's nunc pro tunc order, from $125 to $115 an acre. There was also a $38 reduction an acre on the 260-acre farm, from which no appeal was taken. While the tax appraisers had some knowledge in previous years of these farms, their examination in January 1948 for the purpose of making their report, because of the inclement weather, was quite limited. The objectors used eleven witnesses. None of them was interested. All of them were farm operators as owners or tenants. They had lived long in the locality of the Scherf farms and knew them well. They had good general knowledge of farm values in Clayton county. There was evidence of but three sales of farms at or about the time of the appraisement. One was the Kling farm adjoining the 264-acre farm on the north. It was sold by Mr. Hurley, a witness for the objectors, to Mr. Eilers, also a witness for objectors, for about $200 an acre. Eilers, who lived on his farm, and is familiar with the 264-acre farm, valued the latter at $140 an acre. Hurley testified that the Eiler farm "is considered to be one of the best farms in Clayton county." Hurley had sold the 264-acre farm to John Scherf, deceased, in 1935 or 1936 for

$100 an acre, which Hurley thought was too much. He stated that $150 an acre on that farm was a big price. He valued the farm at $36,000, or approximately $140 an acre on September 17, 1947. He stated that the draw which started on the Kling farm or Eilers farm, where it could be crossed at any point, became a large ditch going entirely across the 264-acre farm, drawing all the water from the Kling farm, and "could not be crossed except by leaving the field and crossing over a bridge on the road near the buildings"; that there are about 200 acres in good land and the building improvements are above the average.

Mueller owns a farm which adjoins the 264-acre farm on the east on which he has lived almost his entire life. He had spent a lot of time on the Scherf farm. He had picked corn and combined grain on it. He stated that the big ditch on it drained all of the watershed from the northern part of Farmersburg Township, and from the east there is another ditch which joins this one and they come together right at the edge of the Scherf field; that there are usually one to three floods a year which wash out any fills in the ditch and also wash out the fences in about fifteen places.

Zittergruen lived on his father-in-law's place, which joins the 264-acre farm, for the past six years. He had been all over the latter place and had worked on it. He testified to the ravines which cross it and drain neighboring farms, and that "the south 64 acres is about nine tenths sink holes and they are rough hollows that cannot be crossed except in a few places," which divide it into three or four pieces.

Henning lives a mile west of the 264-acre farm and worked on that farm in 1947 and many times prior to that. He described the ravines, erosion and washouts caused by flooding from the upper watershed. He testified that the 64 acres was poorer land, clay, rocky points, ditches and timberland.

Kurdelmeier's land, where he had lived for eleven years, joins this 264-acre tract. He knew the farm and the kind of a farm it was and its fair market value. He testified: "I know this farm and have been over it. I know how it lays, the types of fields and the condition of the soil."

Larson, a realtor, who operates a hatchery and owns and operates several farms with tenants, testified that he had been on the 264-acre farm many times and knew the ditches and drains and how the land lies, the condition of the soil and the condition of the fences and buildings, some of which were in fairly good condition, but needed repairs. He drove past the farm almost every day. The buildings are about a quarter of a mile from the paved highway on a dirt road which is impassable many times during the year. He knew the Fred Vogt farm of 180 acres, located about two miles north of this Scherf farm on a gravel road, which sold for $225, and also the 240-acre Kling farm. Both of these farms are better improved than the Scherf 264-acre farm and have better land. He testified: "I would say the buildings on the Fred Vogt farm are good and the land a little better than the Scherf farm, there is no waste, and the land is gently rolling and would compare with the Kling farm. There are grassy ravines and there isn't any bushy timberland such as on the Scherf farm and there are very few acres on the Vogt farm that are not tillable."

Mr. Meder and Mr. Johnson were the only witnesses who gave any description of the 264-acre farm and it was largely in accord with the testimony of the objectors' witnesses. Mr. Meder had the farm for sale in 1941 and was over it at that time. He testified: "Mr. Johnson and Mr. Lenth appraised the farm on January 15, 1948, we didn't go over the farm that day * * * it was too cold for anybody to go over it."

Mr. Johnson testified that the buildings were above average, but some of them needed repairs.

Mr. Reimer was confused in getting the 276-acre farm located and when asked if he was acquainted with it, he answered: "Just as knowing the place." With that slight evidence of his qualification, he valued the place at $150 an acre. He was then asked if he was familiar with the 264-acre farm, and answered: "Yes, sir; more so than the other." Without further examination he testified that he "could sell that farm for $250 an acre today," and that it was worth that on September 17, 1947.

The 360-acre farm is inferior to the other farms. Six witnesses testified about this farm for the objectors. They were

better qualified than the witnesses for the Commission because of their greater familiarity with the farm and their more complete knowledge of the character of the land, the improvements, and the uses to which the land could be put, and the accessibility of the farm. All of them had been over the farm many times. Some had worked on it. They knew its present condition. They testified that the buildings and fences were poor. Some of the buildings had fallen down. All were out of repair. The barn was a long, slim structure that one witness said looked more like a hoghouse. The hoghouse was in a low mudhole. There were about 120 acres along the west side of the road that was fair land, but it was cut with draws. A creek divided the farm. On the east side of the farm were 140 acres, much of which was waste land, and all very poor and rocky. About a mile from the buildings were forty or more acres of steep bluff land covered with soft timber, brush and wild gooseberry bushes. It was of little value because of the difficulty to get to it or on it. There was another 40-acre tract adjoining this timberland which was rough and not workable, and which could not be used as pasture because of its location. The farm was badly infested with quackgrass and thistles.

One witness, Downey, owns 110 acres about one-half mile south of this farm which his father purchased in 1926 for $120. It lies flat and all of it could be plowed. It was better land than the Scherf or Seeman land. Adjoining the Scherf 360 acres is the Seeman farm of 254 acres, which is of the same character as the Scherf land. The Seeman farm sold lately for $13,375, or about $53 an acre. Another witness said the Seeman farm sold for about $65 an acre. George Heck, age fifty-two, a farmer all his life, owns a farm adjoining the 360-acre farm, where he has lived since 1933. He had worked on the Scherf farm a lot and knew the poor character of the land and improvements. He knew the Seeman land and of its sale.

None of the witnesses for the Commission said anything about the improvements on the place. Mr. Meder was the only witness for the Commission who gave any description of the land, and he did not disagree greatly in this with the objectors' witnesses. Until January 15, 1948, when the appraisers had

viewed the place, neither he nor Mr. Johnson had been on the place for several years. On that day it was cold and stormy and the ground was covered with snow. They went over part of the land near the buildings and observed the remainder at a distance. None of the three witnesses for the Commission gave any testimony about the buildings or fences or any other improvements on this farm.

Mr. Reimer at one time, some years ago, owned the personal property of a tenant on this farm. Asked to describe the farm "in his own words", he stated: "Well, the land that lies on the east side of the road is about the same kind of land as mine is. There is some land on the other side that has some timber on it. It is rough there although it makes good pasture, and all in all makes a pretty nice layout."

The buildings on the 276-acre farm are about 65 rods off the paving on the same dirt road that leads to the 264-acre farm. It is spoken of as the south Schmalfeld farm. The buildings are old and big and need a lot of work on them. Hurley had the farm for sale in 1937 and 1938 and tried for two years to sell it for $80 an acre, and could not. Mr. Schmalfeld finally sold it to John Scherf. Hurley testified:

"There is a piece of land west of the barn, runs maybe a quarter of a mile south, I should judge 35 or 40 acres, a pretty nice piece of land and a 65-acre strip running southeast of the ridge which is pretty good land, the rest is poor. * * * There are more than 100 acres in this farm that is creek, brush and rocks that could never be put into a state of cultivation. The two poorest farms between Elkader and McGregor, is the John Scherf farm and the other * * * is the south Schmalfeld farm [the 276-acre farm] * * *. There is a big dry hollow, a big ditch that drains some other farms west, and there are other ditches running through there and further south maybe 40 or 50 rods that are full of trees and things, sink holes, rock and yellow clay."

Larson, who knew the farm well, gives testimony similar to Hurley. He said there were "200 or 225 acres under cultivation. * * * About 100 acres of real good land up around the

buildings. The other 120 acres falls off into hollows and pretty heavy clay and some rocks; there is lots of quack in it; it's hard to cultivate, but I can say it is just medium to poor."

Zittergruen had worked on the farm and said it was "quacky and thistly" and there were lots of hollows in it.

Kurdelmeier, whose farm joins this one, gave similar testimony.

Henning had worked on this farm in 1947 and prior years and testified that there were many clay hills which washed badly and on which the crops dried out readily; the land near the timber was rocky and clayey and had lots of quack and thistles in it; the barn needed repairs and a roof badly.

The testimony of Meder and Johnson for the Commission is not substantially different from that of Larson and Hurley. Reimer testified to no facts about this farm.

By reason of its quantity and quality and the superior qualifications of the objectors' witnesses the evidence of the objectors substantially preponderates over and excels in probative force and value the evidence of the Commission. Much of the testimony for objectors is from farmers and landowners operating and owning land adjoining the Scherf farms or in their immediate vicinity. They have no interest in the matters involved. They certainly would have no interest in depreciating the value of land adjoining or in the immediate neighborhood of their own, and thereby detracting from the value of their own land. It is of some significance that the Commission produced but one witness to support the appraisers, and his testimony was of little aid. The decision of this court and its comment through Justice Morling, in In re Estate of Seibel, 207 Iowa 100–102, 222 N. W. 361, are apropos in this case.

It is our conclusion that a just and equitable result will be more nearly effected by the appraisement, as of September 17, 1947, of the 264-acre farm at $175 an acre, of the 276-acre farm at $115 an acre, and of the 360-acre farm at $72.50 an acre.

The order, judgment and decree of the district court is therefore reversed and remanded and said court is directed to render and have entered of record a final order, judgment and

decree in conformity with this opinion. The costs in the district court and on this appeal are taxed to the Iowa State Tax Commission.—Reversed and remanded.

All JUSTICES concur except MANTZ, J., not sitting.