G.D. BAIR, Director of Revenue of Iowa Department of Revenue, Appellant,

v.

ESTATE OF Martha BIGGINS, Deceased, Ruth Geisinger, Executor, Appellee.

No. 83–1121.

Supreme Court of Iowa.

Oct. 17, 1984.

Thomas J. Miller, Atty. Gen., Harry M. Griger, Sp. Asst. Atty. Gen., and Thomas M. Donahue, Asst. Atty. Gen., for appellant.

Thomas L. McCullough of McCullough Law Firm, Sac City, for appellee.

Considered by UHLENHOPP, P.J., and McGIVERIN, LARSON, SCHULTZ, and WOLLE, JJ.

UHLENHOPP, Justice.

This appeal involves the authority of an administrative agency to challenge an appraisal of property by county appraisers in order to bring the valuation into conformity with statute, notwithstanding the absence of such challenges in other estates in the past.

Martha Biggins died on October 17, 1980. She owned 160 acres of farmland and had a half interest in another 80 acres, all in Buena Vista County, Iowa. The executor filed a preliminary inheritance tax report and listed the land at $1500 per acre. The Buena Vista County inheritance tax appraisers valued the land at the same figure.

Proceeding under section 450.31 of the Iowa Code of 1979, the Director of Revenue objected in district court to the appraisal. Section 450.31 provides that such objections shall be tried in equity. The standard of valuation of property as provided in sections 450.31 and 450.37 is "its value on the market in the ordinary course of trade." (We note that these sections were subsequently amended. 1983 Iowa Acts, ch. 177.)

The appraisers' report was before the court at the trial. In addition, three valuation witnesses testified. Much of the testimony of one of them, decedent's grandson, was not received because of noncompliance with a procedural rule. He did testify that he thought the appraisal was fair "in comparison with what the appraisers had appraised other Buena Vista County land for." One of the inheritance tax appraisers, Daniel T. Flores, also testified. His testimony includes the following:

Q. When you appraise, do you generally appraise at market value? A. Well, I think that what we do probably is to be conservative, and I think yes, we have market value in mind.

Q. Mr. Flores, is this land or would this land have sold for $1500 an acre in 1980? A. 1980? Well, you see, my problem is that I don't have a specific recollection of this particular piece of ground. I couldn't even tell you where it lays, how many acres are involved.

Q. Mr. Flores, does property get valued for inheritance tax purposes at less than what land sells for in this county? A. I don't know if that's a fact or not. It seems to me that on occasion there are or there may be some appraisals which arguably are below market value, but market value is one of those things which really in our experience is indicated and normally determined by sale.

Q. Do you consider market value different for inheritance tax purposes than for property tax purposes? A. Market value is different for inheritance tax purposes and property tax purposes?

Q. Yes. A. No, I don't believe so.

Q. Do you think that market value is different for inheritance tax purposes than what you would go out and buy a piece of property from somebody else has? A. Not necessarily.

Q. Mr. Flores, do you think—strike that. Do you think that all property in this county is appraised for inheritance tax purposes at market value where the market value being what a willing seller would pay a willing buyer? A. I'm not exactly sure that I know how to answer that for this reason. That we make, I believe a conservative appraisal when we are appraising estates. It is certainly possible that real estate that we made an appraisal on for X number of dollars would sell for a greater amount.

Q. Mr. Flores, when you go to do your appraisal, are you aware of the appraisal that the estate would have put on the property? A. I think we generally are because I think that is shown on the return. I think that when the appraisal papers are made out the what I would say "suggested value" is shown on those papers, yes.

Q. On the one that I have in this case, that was listed 240,000 and 60,000 for two different parcels of property and the appraiser came up with the identical amount. Is that normal? A. It's pretty common. Yeah, I'd say it was normal.

Q. Do you generally accept the value that are put in by the estate? A. Generally, yes; always, no.

The trial court summarized Flores' testimony thus:

Based upon his testimony the Court finds that the method used by the appraisers in appraising the Biggins Estate land was no different from the method used by the appraisers in appraising any other farmland in the county. They were consistent in their methods of appraisal. There has been no appeal by the Director or objections filed by the Director as to any other appraisal made by the Buena Vista County inheritance tax appraisers except possibly one which would have been five to ten years ago. On cross-exam by counsel for the Director, Mr. Flores testified that the inheritance tax appraisers' valuations are very conservative and that some valuations are arguably below market value. He further testified that at the time of the appraisal the appraisers are aware of the value the estate has placed on the land, that in the Biggins case the appraisers valued the land at the value the Estate had placed upon it, and that it is normal to do so.

The third witness, Donald E. Reed, a revenue department employee, possesses extensive qualifications, has conducted numerous appraisals, made an in-depth study of this land and of sales of comparable farms, and prepared a lengthy and detailed report. He made adjustments for cash versus contract sales, and considered numerous other factors. The five farms which he found comparable respectively sold for adjusted per acre prices of $2512, $2804, $2882, $2952, and $3172. After detailing his qualifications, his examination of this farm and of comparable farms which had been sold, and the factors he considered, he testified:

Q. Mr. Reed, what is your professional opinion of the market value of the subject property on October 17th, 1980? A. My opinion would be the same as when I made the appraisal; that it would

be—as the appraisal indicates, it would be $587,200 or $2520 per acre.

■ The evidence clearly demonstrates that the county appraisers' valuation of $1500 is substantially below the market value of the Biggins land. The trial court found as a fact:

The Court finds as a matter of fact that the value placed upon the Biggins Estate farmland is less than the value of the property in the ordinary course of trade.

The Court further finds that the appraisal was fairly and in good faith made.

■ If we may conclude that the county appraisers have customarily valued farmland below market value, this action appears to be a test case to determine whether past practice is now obligatory, or whether the department can insist on application of the statutory market value standard.

The trial court aptly presented the problem as follows in its decision:

Sec. 450.32, The Code, provides that if the Court finds (1) the amount at which the property is appraised is its value on the market in the ordinary course of trade, *and* (2) the appraisement was fairly and in good faith made, it shall approve the appraisement. The Court would have to find affirmatively on both (1) and (2) in order to approve the appraisal. The Court has made an affirmative finding only as to (2) that the appraisal was fairly and in good faith made.

Sec. 450.32, The Code, also provides that (1) if the Court finds that the appraisal was made at a greater or less sum than the value of the property in the ordinary course of trade, *or* (2) that the same was not fairly or in good faith made, it shall set aside the appraisal and fix the value of the property for inheritance tax purposes. If the Court finds that *either* (1) *or* (2) is a fact, then the statute requires the Court to set the sale [sic] aside and fix a value. The Court has found that No. (1) is true, that the appraised value is less than the value of the property in the ordinary course of trade, and the statute thereby requires the Court to set the appraisal aside and fix a value.

The statute does not give the Court any options if it should find, as the Court has, that the appraised value is less than the value of the property in the ordinary course of trade *and* that the appraisal was fairly and in good faith made.

The Court concludes that although Sec. 450.31, The Code, provides that the matter is an equitable matter it does not allow the Court to do equity in this particular situation.

Because the Court has found that the appraised value is less than its value in the ordinary course of trade, Sec. 450.32, The Code, would seem to require that the appraisal be set aside and a new value for inheritance tax purposes be affixed to the land. But the Court has also found that the appraisal was fairly and in good faith made. In these circumstances would it be equitable or in the best interests of justice to set the appraisal aside?

The court then resolved the problem thus:

The evidence shows that the inheritance tax appraisers of Buena Vista County, Iowa have valued farmland of decedents' estates very conservatively for many years without objection by the Director. In some cases they appraised the farmland at the value affixed to the land by the estate. The Director has, by failing to object, allowed such appraisals to determine the valuation upon which inheritance tax was paid on every piece of farmland owned by every decedent in Buena Vista County, Iowa for a period of seven years. The Court concludes that it would be inequitable under these circumstances to now permit the Director to value the 200 acres of the Biggins estate at a value of $1,000 per acre or $200,000 greater than other land. To permit this to be done would shock the conscience of this Court.

The Court concludes further that when the Legislature, by statute, gives a Court equitable power in this type of case, the Court's authority and power to do equity overrides any statutory restrictions on the Court's inherent equity authority.

The Court concludes, accordingly, that the appraisal made by the inheritance appraisers in this matter shall stand and is the value fixed by the Court for inheritance tax purposes.

The director appealed. We face two principal questions. May the director insist upon appraisal of farmland at its value on the market in the ordinary course of trade despite past practice? What was the market value of this land at the time in question?

I. The executor contends for several reasons that the director must stay with past practice. We have considered the reasons but find them without merit. We address three of them.

■ One argument is that the director, head of an administrative body, lacks power to alter a long-standing administrative application of a statute, especially after intervening legislative sessions have occurred without amendment of the statute. This argument does not have support in the authorities. If an agency concludes that its application of a statute is in error, it is not required to go on indefinitely misapplying the statute; it may alter the application. *Calbeck v. Travelers Insurance Co.*, 370 U.S. 114, 82 S.Ct. 1196, 8 L.Ed.2d 368 (1962); *Automobile Club of Michigan v. Commissioner of Internal Revenue*, 353 U.S. 180, 77 S.Ct. 707, 1 L.Ed.2d 746 (1957); *Alstate Construction Co. v. Durkin*, 345 U.S. 13, 73 S.Ct. 565, 97 L.Ed. 745 (1952); *New York Telephone Co. v. FCC*, 631 F.2d 1059 (2nd Cir.1980); *Association of Clerical Employees v. Brotherhood of R. & S.S. Clerks*, 85 F.2d 152 (7th Cir.1936); *Utah Hotel Co. v. Industrial Comm'n*, 107 Utah 24, 151 P.2d 467 (1944). *See United States v. Missouri P. Ry.*, 278 U.S. 269, 49 S.Ct. 133, 73 L.Ed. 322 (1928). This is true despite the absence of legislative change in the statute in the meantime. *Helvering v. Wilshire Oil Co.*, 308 U.S. 90, 60 S.Ct. 18, 84 L.Ed. 101 (1939).

Another argument is unfairness of undervaluing the property of one taxpayer or class of taxpayers and valuing the property of another taxpayer or class of taxpayers at full value. The executor relies on *Chicago & N.W. Ry. v. Iowa State Tax Comm'n*, 257 Iowa 1359, 137 N.W.2d 246 (1965). In that case the State Tax Commission had the complex task of valuing railroads for property tax purposes. It employed a formula to arrive at an initial value, and then discounted that initial value by judgment factors. The evidence showed that in applying the judgment factors year after year, the Commission regularly discriminated against the North Western. "The 1963 assessments show the commission applied a 3% reduction of the formula value in [North Western's] case, while it applied a 28% to 36% reduction to the other four railroads. Like discrepancies and general valuation reduction discriminations were shown for preceding years." *Id.* at 1372, 137 N.W.2d 253. North Western challenged the assessments under section 441.-37(1) of the Iowa Code of 1962 ("That said assessment is not equitable as compared with assessments of other like property in the assessment district."). This court held:

Continual and substantial departure from the formula value in fixing actual value in the case of all major railroads operating in Iowa except the North Western, shown as a practice, compels a conclusion that the commission willfully failed to fairly assess plaintiff's property. These wide departures exceeded the discretion lodged in the commission and warranted the trial court's action in setting aside and declaring the 1963 assessment against the North Western void. Since the relief prayed on this ground was properly granted, the commission must forthwith reassess the plaintiff's property so that it will be fair and equitable with the property of the other operating railroads in Iowa.

*Id.* at 1373, 137 N.W.2d at 254.

■ The situation before us now is different in several respects. One is that the

director did not make disparate valuations. The director is endeavoring to undo an undervaluation made by local appraisers. Again, the factual setting is not parallel. Buena Vista is but one county. No showing is made that appraisals are too low throughout the rest of the state; some county appraisers may be valuing farmland according to the statutory standard so that estates there are the actual victims of discrimination, if discrimination exists. Too, discrimination against other estates may exist within Buena Vista County itself. A decedent who dies owning only certificates of deposit or corporate bonds which are listed on exchanges does not have the advantage of a substantial discount in valuation; the assets have a definite dollar value. The discrimination is against such estates; they, not the Biggins estate, are in the position of North Western Railway. If special provision is to be made for certain kinds of property within constitutional limits, the task is for the General Assembly and not for the county appraisers. Finally, in this case the director is asking that the farmland be valued at its value according to the legal measure of valuation. In the *North Western* case this court did not order that North Western's property be valued below the legal measure but rather, that it too be valued in accordance with that measure. We hold that the director cannot be prohibited from insisting on the statutory valuation standard on the basis of the *North Western* case.

■ Finally, a convincing argument cannot be made that the director is estopped by not having challenged farmland appraisals in the past. We pass by the question of estopping the state, and proceed to the estoppel requirement that the party asserting estoppel must establish that he took action or refrained from taking action in reliance on a representation of the other party. *S & M Finance Co. v. Iowa State Tax Comm'n,* 162 N.W.2d 505 (Iowa 1968). No evidence appears that this decedent placed or retained her assets in farmland in reliance on a practice of low appraisals in Buena Vista County.

■ Although the case is in equity, the trial court could not disregard the provisions of the statute on valuation. *Madrid Lumber Co. v. Boone County,* 255 Iowa 380, 387, 121 N.W.2d 523, 527 (1963) ("Courts of equity can no more disregard statutory requirements than can a court of law."); 27 Am.Jur.2d *Equity* § 124 (1966). As the trial court correctly found that the appraisal was less than the market value of the land, it should have set the appraisal aside and adjudged the proper value. Iowa Code § 450.32 (1979).

■ II. Since the proceeding is in equity, we review de novo. *In Re Siebel's Estate,* 207 Iowa 100, 222 N.W. 361 (1928). In the event of reversal, as here, we determine the taxable value. *In Re Scherf's Estate,* 240 Iowa 1001, 38 N.W.2d 578 (1949).

■ The executor's main effort was to prevent the director from changing the past *method* of appraising farmland. As to the second issue, *value,* the testimony of the expert Reed is entitled to substantially greater weight than the other evidence in the case. The county appraisers' valuation was considerably lower than the market value of the land. The executor did not produce evidence of how much higher than the appraisers' valuation the market value of the land actually was. The Reed testimony constitutes the evidence in this record of the market value.

A preponderance of the evidence establishes the market value of the Biggins' property was $587,200, and we so find. We return the case to the district court with directions to set aside the prior judgment and to enter a new one adjudging the value in that amount.

REVERSED AND REMANDED.