HOWARD C. MAXWELL and BETTY J. MAXWELL, appellees and cross-appellants, v. RAYMOND SHIVERS, chairman, Polk County Board of Review, appellant.

No. 51408.

(Reported in 133 N.W.2d 709)

Harry Perkins, Jr., County Attorney of Polk County, Chris L. Becker, Assistant County Attorney, and J. R. McManus, of Des Moines, for appellant.

Ross H. Sidney, of Des Moines, for appellees and cross-appellants.

LARSON, J.—This controversy arose when the Polk County assessor made his 1961 assessment against three parcels of real estate owned by Howard C. and Betty J. Maxwell in Altoona, Iowa. When their petition for reduction was denied by the county board of review, the taxpayers appealed to the district court. Pursuant to a hearing, the court overruled the board's motion to dismiss and reduced the assessment upon the improved real estate, Parcel 1, and confirmed the assessments on Parcel 2 and Parcel 3, which were bare lots abutting Parcel 1.

The board of review appealed and, although the taxpayers took a cross-appeal on rulings adverse to them, for lack of prose-

cution we deem that appeal abandoned. Parcel 1 consists of Lots 6 and 7, Long's Place, Plat 3, now included in and forming a part of the City of Altoona, Iowa. The improvements consist of a fully modern one-story seven-room brick veneer house, with two and a half baths, full concrete basement, which included a recreation room and shower bath, a two-car garage, a cement driveway, and a fenced-in outside swimming pool and bathhouse.

The trial court carefully reviewed the law and the evidence and rightfully concluded: "The total of the evidence has not convinced the court that the assessments are excessive, inadequate or inequitable." Nevertheless, it proceeded to consider some testimony of structural defects in the residence built in 1957 which it said reduced the value of the premises $846. It then reduced the 100 percent assessment on the buildings from $15,410 fixed by the assessor to $14,564 and adjusted the 60 percent assessment accordingly. Appellant contends that in so doing the court wrongfully assumed the functions of the assessor, considered matters not raised before the board of review, and exceeded its authority under the existing law now set forth in chapter 441, Code, 1962. We must agree.

I. Judicial inquiry into the propriety of property assessments made by the assessor and confirmed by the board of review is restricted to whether those officials did perform the duties imposed upon them by law. Butler v. City of Des Moines, 219 Iowa 956, 961, 258 N.W. 755, 758; Daniels v. Board of Review, 243 Iowa 405, 425, 52 N.W.2d 1.

The task of assessing property is placed squarely upon the assessor and on the board of review. The law applicable in 1961 was found in chapter 291, Laws of the Fifty-eighth General Assembly, which is now chapter 441, Code, 1962. Therefore, for convenience, our reference to applicable statutes will be to the 1962 Code.

It has often been said every determination of property value requires opinion and judgment and that the court is not free to substitute its judgment and opinion for that of the proper officials unless it finds the action of the assessor is "arbitrary or capricious or so wholly out of line with the actual values as to give rise to the inference that for some reason he has not properly

discharged his duty, "* * *." Butler v. City of Des Moines and Daniels v. Board of Review, both supra. Stated another way, "unless it is manifest that the assessment is grossly excessive and is a result of the exercise of the will and not of the judgment", a mere showing of the difference of opinion between the assessor and the taxpayer will not justify court interference. Clark v. Lucas County Board of Review, 242 Iowa 80, 97, 44 N.W.2d 748, and citations; In re Appeal of Bankers Life Co. v. Zirbel, 239 Iowa 275, 279, 31 N.W.2d 368.

There is nothing in this record to indicate the actions of the assessor or the board were arbitrary or capricious. Indeed, no such charge was made and no such finding was made by the learned trial court. Thus, the first issue for consideration is whether the evidence, viewed in a light most favorable to the taxpayer, discloses ample proof that the assessed value was so out of line with other similar or comparable property values or with actual values as to give rise to an inference that the assessor had failed to properly discharge his duty. We think all the relevant and competent evidence, including complainants' evidence, tends to prove the contrary.

II. Of course, in determining assessed values, it is the duty of the assessor to fix such values equitably in comparison with other like property. Under our laws property cannot be assessed at more than its actual value and cannot be assessed inequitably as compared to other property. Trustees of Flynn's Estate v. Board of Review, 226 Iowa 1353, 1356, 286 N.W. 483. Although the property of a taxpayer is assessed at less than its true value, nevertheless, if it is assessed higher proportionately than other similar property in the area, he has a just cause of complaint. Iowa Central R. Co. v. Board of Review, 176 Iowa 131, 134, 157 N.W. 731, 732.

In order to obtain relief upon the ground that his property is assessed inequitably, it is essential that the taxpayer prove (1) that there are several other properties within a reasonable area similar and comparable to his; (2) the amount of the assessments on those properties; (3) the actual value of the comparable properties; (4) the actual value of his property; (5) the assessment complained of; and (6) that by a comparison his

property is assessed at a higher proportion of its actual value than the ratio existing between the assessed and the actual valuations of the similar and comparable properties, thus creating a discrimination.

In an effort to meet these requirements, complainants called as witnesses in their behalf Mrs. Betty Maxwell, Mr. Edmund Scarpino, a commercial photographer, Robert Huston, a realtor, Mr. Samuel Wise, the owner of an alleged similar property in Altoona, and Ora Carman, the Polk County assessor. Mrs. Maxwell described the premises in Parcel 1 and, although she did not place a value thereon, she told of its cost. She said the original cost of the residence in 1957 was $26,534, and additions of $1189 and $4800 were added later. The cost of the land was $1200. As we figure it, this makes a total cost of $33,723, including the pool added in 1960. Mr. Huston estimated the sale value at $34,639 and said: "There are no or not many comparable properties in Altoona to that of the Maxwells." Mr. Huston did not examine the Wise property, listed by complainants as comparable, but made a drive-by appraisal of between twenty-five and thirty thousand dollars. This was the only property in the immediate area the taxpayers sought to compare with theirs. Photo Exhibit I of that property shows a nice brick one-story residence, and the assessor's valuation report, Exhibit T, shows it 100 percent assessed in 1957 at $9850 and in 1961 at $9500.

The valuation report cards used in connection with this appeal, prepared and kept in the Polk County assessor's office, are comprehensive. In addition to the description of the premises, and its address, are listed the owner, transfers of recent date, if any, the value of the lot and its size and front foot price, a summary of land and building assessments for eight years, and the totals for each year. On the back of the card there is a floor plan showing area and shape of the building; if any, and a place to check the materials, facilities and extras, such as foundation, roof, floors, finish, plumbing, fireplaces, baths, garages, etc. These are quality-graded as plus and minus the normal, and the value of these components is lowered or raised by the judgment of the inspecting assessor. It would indeed be hard to find a more complete data valuation sheet for comparison purposes than this

report. In it is a complete picture of the basis of the assessor's judgment, and from those exhibits introduced herein it appears he has done his work well.

Complainants' residence was assessed on valuation report Exhibit P at $14,600 in 1957, $13,880 on the buildings and $720 on the land. After improvements in 1960 the 1961 assessment was $16,130, $15,410 on the buildings and $720 on the land. Defendant's valuation expert gave an actual value of $40,000 on this property.

■ There are many features which seem to make complainants' property different from the Wise property, and we doubt that they are sufficiently similar to be comparable. Even if they were, it is well established that the showing of only one other comparable property in the area or district is not sufficient to afford relief, the rule being that an assessment is not discriminatory unless it stands out above the general level. As we pointed out in Crary v. Board of Review, 226 Iowa 1197, 1200, 286 N.W. 428, if the rule were otherwise, an isolated instance of under-assessment might result in a general reduction for all similar properties.

■ Complainants, through the assessor and his valuation reports, show values and assessments on four other properties in Clive, some 15 miles west of Altoona in Polk County, which they claim are comparable. Photographs of them were also introduced. Appellant contends they are not comparable and are too remote. While we doubt they were sufficiently shown to be in an area where properties are comparable, we note the assessor said they were not comparable, that they were not as well built as complainants' home, and that they did not have the same facilities. After a careful review of this evidence, like the trial court we find therein nothing to indicate an unfavorable comparison with complainants' assessment, and agree that the assessment on Parcel 1 was not shown to be excessive or inequitable.

■ III. Where the proof fails to establish discrimination, no inference arises that the assessor and the board of review failed to perform their duty under the law and, as stated in our Division I, the court has no right to assume those functions. Thus, when the court considered testimony of construction de-

fects to reduce the assessment, error crept in and the reduction cannot be sustained.

Although Mrs. Maxwell testified that the waterlines in the house were too small and should be replaced, that the ducts from the furnace and air conditioner were too small and needed replacement, and that the fireplaces and garage drainage were improperly constructed, it appears none of these items was called to the attention of the assessor or board of review as grounds for a reduction in assessed value of the premises. No doubt they were items for proper consideration of the assessor and the board of review, but not the court, in these circumstances. It is the judgment of the assessor which the statute requires in making the assessment, and it should be accepted unless timely objection is made for good cause.

No doubt the trial court believed the defects had a bearing on the actual value of taxpayers' property. That may be true, but any complaint as to their effect on the assessment should first be made to the board of review, not the court. We have examined complainants' petition for review filed May 20, 1961, which was denied May 31, 1961, over the signature of Raymond Shivers, chairman, and find no reference to these alleged defects. While relief was asked in valuation, the basis was discrimination in comparison with other properties, not structural defects affecting the actual value of this residence. See section 441.37 (4). It further appears that, even with the loss of value due to these alleged defects, the actual value of this property was ample, being over twice the valuation placed thereon by the assessor. See section 441.21, Code, 1962, on ratio requirements.

Section 442.7, Code, 1958, now section 441.39, Code, 1962, provides: "The court shall hear the appeal in equity and determine anew all questions *arising before the board* which relate to the liability of the property to assessment or the amount thereof. * * *." (Emphasis supplied.) Since these items were not raised before the board and were not shown to be excessive nor so out of line as to infer official impropriety, we must hold the trial court erred in considering them in reducing this assessment, and the original assessment on Parcel 1 must be reestablished.

IV. Other issues were raised by appellant which we need

not consider here in light of the above conclusion. It may be well, however, to point out the requirements of section 441.38, Code, 1962, which provides: "Appeals may be taken from the action of the board of review with reference to protests of assessment, to the district court of the county in which such board holds its sessions within twenty days after its adjournment. No new grounds in addition to those set out in the protest to the board of review as provided in section 441.37 can be pleaded, but additional evidence to sustain said grounds may be introduced. * * * Appeals shall be taken by a written notice to that effect to the chairman or presiding officer of the board of review and served as an original notice."

 Appellant's motion to dismiss filed at the conclusion of all evidence premised on a claimed lack of jurisdiction because of failure to show compliance with the above provisions was over-ruled, and we think properly. There was a general, not a special, appearance entered on behalf of the board, and the matter was fully litigated by able and skillful counsel. Chapman Bros. v. Board of Review, 209 Iowa 304, 306, 228 N.W. 28. The jurisdictional defect here, if any, was not as to subject matter, and any question of timely and proper notice was waived.

V. Having determined that the assessments were not shown to be excessive or inequitable, and that the court erred in assuming the role of assessor in reducing the assessment due to structural defects, the cause must be remanded with instructions to reestablish the assessments made by the assessor, and confirmed by the board of review, on all three parcels listed in this appeal. —Reversed and remanded.

All JUSTICES concur.