Lois A. WUNSCHEL, Appellant,

v.

BOARD OF REVIEW, CARROLL COUN-
TY, Iowa, Appellee.

No. 2-56185.

Supreme Court of Iowa.

April 24, 1974.

Russell S. Wunschel and Dennis L. Kemp, Carroll, for appellant.

David E. Green, Carroll Co. Atty., and Herrick, Langdon, Belin & Harris, by Allan A. Herrick and Jeffrey E. Lamson, Des Moines, for appellee.

Heard before MOORE, C. J., and RAWLINGS, REES, UHLENHOPP and McCORMICK, JJ.

RAWLINGS, Justice.

Plaintiff, Lois A. Wunschel, appeals from adjudication regarding valuation of her home property for tax assessment. We affirm.

January 1, 1971, the Carroll County Assessor, for tax purposes, placed a $71,690 valuation on plaintiff's home in Carroll.

May 12, Mrs. Wunschel appealed to the County Board of Review (Board) which affirmed the assessor's valuation.

June 14, plaintiff appealed to Carroll District Court.

November 6, 1972, hearing commenced on plaintiff's aforesaid appeal.

This is, in essence, the testimony there adduced by plaintiff:

H. E. Stalcup, a Storm Lake professional farm manager, testified to the effect his search of official records and consultation with the assessor as to the sale of four comparable Carroll residences led him to conclude the reasonable market value of Mrs. Wunschel's home was $56,700. He supported this opinion by use of the so-called replacement cost less depreciation approach.

Louis B. Greteman, a Carroll realtor, testimonially opined $55,000 was the fair market value of the instantly involved property.

Thereupon three witnesses were called by defendant Board.

Harold H. Grundmeier, Carroll County Assessor, testified there had been no sales of comparable property in Carroll upon which a fair market value of the Wunschel home could be determined. He therefore employed the replacement cost less depreciation method to determine fair market value. The value thus determined was $13,970 for land and $57,720 for buildings, or a total of $71,690.

Roman Steffes, Board chairman, expressed the opinion plaintiff's property had a $71,690 fair market value.

Willard Stewart, president of Vanguard Appraisal Corporation, testified that company was engaged to appraise all Carroll County property subject to taxation. It was his opinion fair market value of Mrs. Wunschel's home place could not be determined by the willing buyer-willing seller, or comparable sales method. Therefore resort could only be had to the replacement cost less depreciation approach by which

he determined fair market value of the property here involved was $71,690.

February 12, 1973, trial court filed Findings, Conclusions and Decree. In essence the court thereby held: (1) fair market value could not be determined by the willing buyer-willing seller test, and (2) such value as determined by replacement cost less depreciation was $71,690.

Plaintiff's appeal to Carroll District Court was thereupon dismissed.

Although three questions are here posed by Mrs. Wunschel it appears this is the real issue raised by her: Was the assessor justified in finding there were no comparable sales and thus utilizing the replacement cost less depreciation method to determine fair market value of plaintiff's property?

I. Our review is de novo. See Maytag Company v. Partridge, 210 N.W.2d 584, 595 (Iowa 1973); Juhl v. Greene County Board of Review, 188 N.W.2d 351, 353 (Iowa 1971). Weight is accorded trial court's findings but we are not bound by them. See Iowa R.Civ.P. 344(f)(7).

II. Attention is foundationally directed to relevant statutory enactments regarding valuation of property for taxing purposes.

The Code 1971, Section 441.21, provides, in pertinent part:

"The actual value of all property subject to assessment and taxation shall be the fair and reasonable market value of such property. 'Market value' is defined as the fair and reasonable exchange in the year in which the property is listed and valued between a willing buyer and a willing seller, * * *. Sale prices of the property or comparable property in normal transactions reflecting market value, and the probable availability or unavailability of persons interested in purchasing the property, shall be taken into consideration in arriving at its market value."

The same statute further states:

"In the event market value of the property being assessed cannot be readily established in the foregoing manner [willing buyer-seller], then the assessor may consider its productive and earning capacity if any, industrial conditions, its cost, physical and functional depreciation and obsolescence and replacement cost, and all other factors which would assist in determining the fair and reasonable market value of the property but the actual value shall not be determined by use of only one such factor."

Finally on the subject at hand § 441.21 also says:

"The burden of proof shall be upon any complainant attacking such valuation as excessive, inadequate, inequitable or capricious; however, in protest or appeal proceedings when the complainant offers competent evidence by at least two disinterested witnesses that the market value of the property is less than the market value determined by the assessor, the burden of proof thereafter shall be upon the officials or persons seeking to uphold such valuation to be assessed."

III. By two disinterested witnesses plaintiff initially introduced evidence in support of her claim to the effect there had been local sales of comparable homes by which fair market value of the Wunschel property could be determined.

■ Thereupon the burden of persuasion shifted to defendant Board. See Maytag Company v. Partridge, 210 N.W.2d at 594–596; Juhl v. Greene County Board of Review, *supra*.

IV. Trial court found evidence presented in accord with the foregoing rule clearly disclosed there existed no ascertainable market value under the willing buyer-willing seller test thus making the replacement cost less depreciation approach applicable.

Plaintiff's attack focuses upon this holding. Consequently it is incumbent upon us to review the factual situation anew.

In that regard plaintiff's witness Stalcup referred to these four sales as comparables:

| | Property | Built Year | Sale Year | Price |
|---|---|---|---|---|
| 1. | Schulz | 1955 | 1968 | $45,000 |
| | (Two story frame house, 9 rooms, no finished basement) | | | |
| 2. | Rogers | 1957 | 1963 | 38,000 |
| | (One story house, 5 rooms above basement) | | | |
| 3. | Christenson | 1954 | 1966 | 44,750 |
| | (One story house, 5 rooms above basement, no city sewer) | | | |
| 4. | Rust | 1956 | 1966 | 37,500 |
| | (No description given) | | | |

Mr. Greteman made no reference to any claimed comparables.

On the other hand it clearly appears plaintiff owns a one and a half story deluxe type brick veneer eight room home containing many built-in extras, a sauna bath, partly paneled and carpeted recreational type basement, with a two unit heating system, an attached double garage, and separate brick veneer garage type of structure, all constructed in 1969 on more than two acres of land in a desirable Carroll residential district.

The witness Grundmeier, assessor, opined the four properties referred to by Mr. Stalcup, *supra*, were not comparables.

Mr. Stewart of Vanguard expressed the same opinion. This witness also testified to the effect a plus and minus method is used by him to determine whether there are comparable sales. He explanatively stated, if more than a 20% or 30% adjustment is necessary the mistake area is so great as to make any comparison meaningless.

In the same vein this court, in Maxwell v. Shivers, 257 Iowa 575, 133 N.W.2d 709 (1965), expressed doubt as to comparability, for tax purposes, of a $25,000-$30,000 property and a $40,000 home.

Also, as trial court aptly observed:

"When we consider, with land values deducted, the comparable sales offered to this record range from a low (Roger's property) sale of $31,760 to a high (Schulz' property) sale of $43,290; the first property has a value only 50.4%, and, the second a value only 68.93% of the total value computed for the Wunschel home, by Stalcup [plaintiff's witness], of $62,800, it is obvious that the differential is greater than is the case in either the cited *Maxwell* case or the Stewart [defendant's witness] 20% formula."

V. Mindful of the foregoing we now hold the assessor was justified in finding fair market value could not be readily established by the willing buyer-willing seller approach, thus permitting utilization of replacement cost less depreciation as the appropriate means by which to determine market value of plaintiff's property.

It therefore follows the instantly controverted assessment must stand.

Affirmed.