Daniel L. and Justine A. POWER, Appellees and Cross-Appellants,

v.

Andrew REGIS, City Assessor for Des Moines, Iowa, and Leroy L. Daubert, Chairman, Des Moines Board of Review, Appellants and Cross-Appellees.

No. 56405.

Supreme Court of Iowa.

July 31, 1974.

Herrick, Langdon, Belin & Harris, Des Moines, for appellants.

Daniel L. Power, Des Moines, for appellees.

Heard before MOORE, C. J., and LeGRAND, REYNOLDSON, HARRIS and McCORMICK, JJ.

REYNOLDSON, Justice.

On' May 22, 1972, taxpayers Daniel L. and Justine A. Power filed protests to the assessment of their home in Des Moines, Iowa. For an unknown reason their tract, all within one city lot, was assessed in three parcels. Following oral hearing, the board of review reduced the assessment on all three parcels, resulting in a total actual value of $42,710. Still dissatisfied, taxpayers appealed to district court, where the revised assessments on two parcels were further reduced. Defendants, city assessor and chairman of the board of review, appeal from that portion of the district court decision; taxpayers cross-appeal from the disallowance of any further reduction on the third tract. We reverse on the appeal, affirm on the cross-appeal, and remand.

Taxpayers purchased their home at 3816 John Lynde Road for $48,000 in July 1971. Their protests were filed in the following year on a form following the permissible grounds of protest set out in § 441.37, The Code, and purported to "object to the assessment made against said property as of January 1, 1972." However, it is apparent from the appendix and taxpayers' brief the complaint was directed to the January 1, 1971 assessment. See § 428.4, The Code ("Real estate shall be listed and valued in 1971 and every four years thereafter"). Taxpayers' 1972 protest on § 441.37 grounds from a 1971 assessment was neither challenged in the pleadings below nor in this court.

None of the three protests asserted the assessment was inequitable or discriminatory as compared with assessments of other like property in the taxing district. Section 441.37(1) provides when this ground is relied on " * * * the legal description and assessments of a representative number of comparable properties, as described by the aggrieved taxpayer shall be listed on the protest, otherwise said protest shall not be considered on this ground." No "comparable properties" were so described in these protests.

Taxpayers' protests relied on grounds specified in § 441.37(2) (excessive assessment), § 441.37(4) (error in assessment) and § 441.35 (change in value from prior year). Copies of the protests were attached to taxpayers' petition in district court, denied in the answer, and never offered at trial.

In district court, taxpayers offered certain file cards from the assessor's office relating to the taxpayers' three parcels. They also offered cards relating to other assessments in the neighborhood to show the assessor in valuing other properties allowed disproportionately greater "deficiency discounts" for topographical features (low areas) than were applied in arriving at the valuation of taxpayers' lower-lying premises. This evidence was objected to because the taxpayers had not protested on the basis of inequality or discrimination and therefore the evidence was rendered inadmissible on appeal by § 441.38, The Code ("No new grounds in addition to those set out in the protest to the board of review as provided in section 441.37 can be pleaded * * *.")

At trial, taxpayer Daniel L. Power waived his pleaded claim their house was over-assessed. His testimony generally related to the rough nature of the three contiguous land parcels, the ditch running through the premises, and the resulting problems. Over objection he testified the adverse topographical features of their parcels were greater than those of the parcels represented by the other assessor card exhibits.

The other witness for taxpayers was a real estate appraiser, Harry A. Winegar. He never testified to the value of taxpayers' real estate. Aside from a general description of taxpayers' land his sole contribution to the evidence was his response, over objection, to the question, "Did you arrive at an opinion as to whether the fair market value would be less on these three [parcels] as related to the surrounding parcels?", to which he responded, "The value would typically be lower if the topography features were the main value and consideration."

Evidence from the taxing authorities consisted of the testimony of M. E. Horman, deputy assessor, who described taxpayers' home and land, identified comparable sales in the immediate area, and fixed the total fair and reasonable market value as of January 1, 1971 at $42,750. The remaining defense witness was Oscar Brandt, career real estate appraiser. He identified sales in the neighborhool he regarded as comparable and computed the replacement cost of the house less a 40 percent depreciation. Based on these considerations, he fixed the total fair and reasonable market value of the property on January 1, 1971 to be $47,000, and on January 1, 1972 to be $49,500.

The district court, comparing the "deficiency discounts" on taxpayers' parcels with those on two adjoining tracts, increased the discount on parcel 2902 from 50 percent to 70 percent, and on parcel 2903 from 70 percent to 75 percent.

## I. *Scope of review.*

Our review is de novo. Wunschel v. Board of Review, Carroll County, 217 N. W.2d 576, 577 (Iowa 1974); Maytag Company v. Partridge, 210 N.W.2d 584, 596 (Iowa 1973). Weight is accorded trial court's findings but we are not bound by them. Rule 344(f)(7), Rules of Civil Procedure.

## II. *Issue of inequitable and discriminatory assessment.*

Relevant statutory provisions relating to the determination of "actual value" of property for taxation purposes have been recently set out in *Wunschel,* supra, 217 N.W.2d at 577–578. The fair and reasonable market value of non-agricultural property is its "actual value" for assessment purposes, the assessed value being 27 percent of actual value. Section 441.21, The

Code; Tiffany v. County Bd. Of Rev. In And For Greene Co., 188 N.W.2d 343 (Iowa 1971); Juhl v. Greene County Board of Review, 188 N.W.2d 351 (Iowa 1971).

The burden of proof is upon the complainant attacking the assessor's valuation, but in protest or appeal proceedings where the complainant " * * * offers competent evidence by at least two disinterested witnesses that the market value of the property is less than the market value determined by the assessor, the burden of proof thereafter shall be upon the officials or persons seeking to uphold such valuation to be assessed." Section 441.21, The Code; Maytag Company v. Partridge, supra, 210 N.W.2d at 596; Tiffany v. County Bd. Of Rev. In And For Greene Co., supra, 188 N.W.2d at 348.

■ Statutory changes in recent years have not modified the long-standing principle that property cannot be assessed at more than its actual value and cannot be assessed inequitably as compared to other property. See Maxwell v. Shivers, 257 Iowa 575, 579, 133 N.W.2d 709, 711 (1965); Iowa Cent. Ry. Co. v. Board of Review, 176 Iowa 131, 134, 157 N.W. 731, 732 (1916).

But where the latter ground is relied on, " * * * it is essential the taxpayer prove (1) that there are several other properties within a reasonable area similar and comparable to his; (2) the amount of the assessments on those properties; (3) the actual value of the comparable properties; (4) the actual value of his property; (5) the assessment complained of; and (6) that by a comparison his property is assessed at a higher proportion of its actual value than the ratio existing between the assessed and the actual valuations of the similar and comparable properties, thus creating a discrimination." Maxwell v. Shivers, supra, 257 Iowa at 579–580, 133 N.W.2d at 711; see Maytag Company v. Partridge, supra, 210 N.W.2d at 594.

■ Although these taxpayers did not protest on the ground of discriminatory (inequitable) assessment of their property, we cannot avoid concluding this is the real basis of their complaints. Taxpayers' brief states:

"The gravamen of the plaintiff's action * * * is that in view of the 55% and 60% discounts allowed by the taxing authorities on other taxpayers' parcels immediately abutting his property, then they should in fairness receive a greater percent discount because of the less favorable topography of their lots."

Taxpayers made no attempt under the *Maxwell* rule to show the other properties referred to were comparable, the assessments on and actual values of those properties, the actual value of their property, or the required comparison of ratios between assessed and actual values of the subject and comparable properties. Their sole effort was to show that one of the factors employed in valuing the various parcels—the "deficiency discount" for topography—was unfairly applied in their case.

The assessor's cards in evidence indicated other valuation factors considered were street surface, curb and gutter, available utilities, frontage and depth.

No one contends the fair and reasonable market value of the subject property and adjoining properties could not be ascertained by using the willing buyer-willing seller formula set out in § 441.21(1), The Code. The one valuation factor selected by the taxpayers as the basis for complaint essentially involves a judgment call by the assessing authorities. The impact of any error in the application of this factor might be offset by an error in the application or extent of another factor. Only a determination of the fair and reasonable market value of this property vis-a-vis its actual value determined by the taxing authorities, compared with those valuations of similar properties in the taxing district, would dis-

close whether these taxpayers ultimately suffered actual discrimination in the assessment of their property. Upon this record we cannot make such determination, even if we were to ignore the defense that taxpayers are precluded by the language of § 441.38 from raising this ground on appeal because it was not included in the protest filed with the board of review.

### III. *Issue of excessive assessment.*

■ The protests filed by these taxpayers incorporated the ground permitted by § 441.37(2), The Code, and in each instance pursuant to that statute, stated the specific amount by which they believed their property to be over-assessed, the amount which they considered to be the actual value of the parcel, and the amount they considered a fair assessment. Similar allegations were incorporated in taxpayers' petition on appeal to the district court, and denied in the answer filed.

But the taxpayers offered no testimony relating to these allegations, nor did they offer the protests in evidence.

Opinion testimony of witnesses for the defense, on the other hand, placed the fair and reasonable market value of taxpayers' property at more than the actual value finally fixed by the board of review.

On this record we cannot reject as excessive taxpayers' final property assessment as modified by the board of review.

### IV. *Issue of error in assessment.*

■ The protest forms employed by taxpayers included the language "4. That there is an error in the assessent as follows:", after which taxpayers stated, "90 unit price per square foot for frontage is unrealistic, unjust and arbitrary."

We doubt this is the type of "error" in assessment intended by the language of § 441.37(4), The Code.

The assessor's cards indicate a computation of a "unit price" multiplied by a factor known as "equivalent frontage." Taxpayers made no attempt to prove properties assigned a lower factor were comparable. They argued that another property located immediately south of their premises was permitted a frontage equivalent unit of only $70. Assuming the card on the adjoining property is properly in evidence, it indicates frontage on a different street designated as "dirt", with no curb and gutter.

Consideration of this issue both below and here is made more difficult by the unexplained fragmentation of taxpayers' property into three parcels for assessment purposes. There is no indication one "parcel" fronts on any street. It is apparent, however, that all form one tract within one city lot. The evidence further shows the total tract has a 224.58 foot frontage on an attractive paved street (John Lynde Road) in a very desirable neighborhood of older, fine homes.

■ Under the holding in our recent cases, all three parcels and the home should be valued together as a unit. See Maytag Company v. Partridge, supra, 210 N.W.2d at 587–588; Tiffany v. County Bd. Of Rev. In And For Greene Co., supra, 188 N.W.2d at 349. And when so valued, as they were in the appeal below, there is no indication there was anything "unrealistic, unjust or arbitrary" in the frontage factor adopted by the assessor.

We hold there was no "error" in the assessment of taxpayers' real estate.

### V. *Issue of change in value from prior year.*

■ Taxpayers' protests, incorporated in their petition by reference, asserted "That there has been a change downward since the last assessment (Section 441.35, Code

of Iowa) due to city sewer overflow, to erosion caused by city watershed and the resulting swamp." This statute necessitates a finding of change in value from the regular January 1, 1971 assessment. See James Black Dry Goods Co. v. Board of Review, 260 Iowa 1269, 1272–1276, 151 N. W.2d 534, 536–539 (1967), cert. denied, 390 U.S. 901, 88 S.Ct. 817, 19 L.Ed.2d 868 (1968).

Taxpayers do not pinpoint the adverse conditions described in the testimony and displayed in the offered photographs as occurring subsequent to January 1, 1971. Nor do they offer any evidence as to actual value of the premises on January 1, 1971, or on any subsequent date.

The only evidence before the court relative to this issue was offered by the defense through witness Brandt, who testified the fair and reasonable value of taxpayers' property was $2500 more on January 1, 1972 than on January 1, 1971.

There is thus no evidentiary foundation to support a finding taxpayers' property sustained a loss of any specific amount of actual value after the January 1, 1971 assessment.

VI.  *Taxpayers' cross-appeal.*

As we have already held, the record in this case does not disclose the assessment on taxpayers' property was discriminatory, excessive or erroneous, nor does it support a finding that the actual value of the property has decreased since the January 1, 1971 assessment. These conclusions necessarily dispose of taxpayers' cross-appeal.

The decision of the district court is therefore reversed on the appeal of the assessor and chairman of the board of review, and affirmed on taxpayers' cross-appeal. Costs are taxed to the taxpayers.

This case is remanded for further proceedings in conformance herewith.