BURTON DULL et al., taxpayers-appellees, v. COUNTY BOARD OF REVIEW, PLYMOUTH COUNTY, appellant (four cases consolidated).

No. 52341.

(Reported in 150 N.W.2d 91)

April 4, 1967.

Rehearing Denied June 5, 1967.

William S. Sturges, County Attorney, for appellant.

Dull Law Firm, of Le Mars, for appellees.

Stuart, J.—The Plymouth County Board of Review has appealed from the judgment of the trial court declaring the assessments against the residences of the taxpayer-appellees illegal and ordering the board to give them the same "functional depreciation" allowed farm residences. The sole question before us here is whether the assessor's method of arriving at the actual value of the properties of these taxpayers resulted in an equitable assessment.

830

■ "Judicial inquiry into the propriety of property assessments made by the assessor and confirmed by the board of review is restricted to whether those officials did perform the duties imposed upon them by law." (Citations) Maxwell v. Shivers, 257 Iowa 575, 578, 579, 133 N.W.2d 709, 711.

■ "In determining assessed values, it is the duty of the assessor to fix such values equitably in comparison with other like property. * * * Although the property of a taxpayer is assessed at less than its true value, nevertheless, if it is assessed higher proportionately than other similar property in the area, he has a just cause of complaint." (Citation) Maxwell v. Shivers, supra.

■ The assessor arrived at actual value of residences located outside of cities and towns by compiling information relative to the size of the home, type of construction, plumbing and heating facilities and all other factors which would affect its cost. From this information he arrived at a replacement cost. He reduced this figure by his estimate of the percent of physical depreciation of the home. He then applied a functional depreciation to arrive at the actual value. We have heretofore approved of this method of computing actual value. Mason v. Board of Review, 250 Iowa 291, 93 N.W.2d 732, 734; Daniels v. Board of Review, 243 Iowa 405, 52 N.W.2d 1, 8; Deere Mfg. Co. v. Zeiner, 247 Iowa 1364, 78 N.W.2d 527, 533, 79 N.W.2d 403.

The difficulty here lies in the way functional depreciation was applied. Of approximately 2580 residences outside of cities or towns in Plymouth County, 2500 were classified as rural and given a functional depreciation of 50 percent. The other 80, which included the homes of the taxpayer-appellees, were classified as "rurban" and given a functional depreciation of 15 percent. In addition the acre of ground on which a rurban home was situated was tripled in value over the other land in the 40-acre tract. The trial court held the 50 percent functional depreciation should be applied to the appellees' residences as well as rural residences and reduced the land value by two thirds.

The assessor was called as a witness for the taxpayers. In spite of his statement on cross-examination that the classification "rurban" or "rural" was based on the use of the land, it

is apparent from his entire testimony that the most important and deciding factor in making the classification was whether the occupant of the residence was a farmer or worked off the farm.

"Mr. Kehrberg testified that if there were two properties exactly alike side by side, one occupied by a farmer and the other occupied by someone who worked in town that he would classify one as a 'farm residence' and the other a 'rurban residence' and the 'farm residence' he would give a fifty percent functional depreciation and the acre of ground on which it was located the same valuation as the other acres in the same forty-acre tract, but for the identical property he classified 'rurban' he would give a fifteen percent functional depreciation and he would increase the 'assessed valuation' of the acre of land on which it was located three times."

"Mr. Kehrberg also testified that if Dr. Burroughs had been a farmer and had operated the farm exactly as he did for his complete livelihood but had not practiced medicine, that he would have given him a fifty percent functional depreciation on his residence and he would have given the assessed valuation of the acre of ground on which was located his residence the same valuation as the other acres in the same forty-acre tract."

"Mr. Kehrberg also testified that a residence outside of the cities and towns of Plymouth County, Iowa, was classified as a 'farm residence' if the occupant of the residence obtained his sole substance of living from that farm,* * * ."

"Mr. Kehrberg also testified in answer to a question by the court that if Dr. Burroughs would retire from medical practice and operate the farm exactly as he is at the present time even though he had substantial income from investments that he would be entitled to a fifty percent functional depreciation."

From this evidence it is apparent appellees' residences were assessed inequitably.

 The assessor and board have a misconception of the nature of "functional depreciation." It does not permit an arbitrary percentage reduction based on a factor wholly unrelated to the actual value. The actual value of a residence is not affected by the occupation of the current owner. It has a separate

and intrinsic value of its own. Its value should not be determined from the source of its occupant's earnings.

■ Functional depreciation aids in establishing the actual value by "taking into consideration the features that reduce the value of the building below what it would be from a physical standpoint." Mason v. Board of Review, supra, loc. cit. page 294 of 250 Iowa, 734 of 93 N.W.2d.

Functional depreciation allows an assessor to give consideration to the fact that an "improvement may be out of proportion, in respect of size and cost of construction, to its location and surroundings and the general demand for property, and, if residential, it may have incorporated in it a number of features and fancies which, while adding greatly to its cost, add little or nothing to its market or selling value." 84 C. J. S. 804, Taxation, section 411.

Without functional depreciation the replacement cost method of establishing the actual value would reflect only the replacement cost reduced by physical depreciation because of age and condition. A value established in this manner would not "take into consideration its productive and earning capacity, if any, past, present, and prospective, its market value, if any, and all other matters that affect the actual value of the property" as required by section 441.21.

■ Functional depreciation, properly determined and applied, is one method of giving consideration to the factors set forth in section 441.21 in arriving at the actual value of a residence. There is evidence acreages near a town with residences and other buildings are in demand in Plymouth County. There is a place for a variation in functional depreciation based on the factors which affect the actual value of the property under consideration. This, however, does not include the occupation of the owner.

■ Because the assessor based his classification for functional depreciation on an improper factor, the assessment was inequitable and illegal. However, the ruling of the trial court requiring the assessor to apply the same functional depreciation to all residences outside of cities and towns in Plymouth County was also improper.

Therefore this case is reversed and remanded with instruction to the Plymouth County Board of Review to revalue the property of each appealing taxpayer by determining its functional depreciation taking into consideration the proper factors. —reversed and remanded.

GARFIELD, C. J., and LARSON, SNELL and MOORE, JJ., concur.

RAWLINGS and BECKER, JJ., dissent.