**R.S. FOX, L.L.L.P., Plaintiff–Appellant,**

v.

**BOARD OF REVIEW OF DES MOINES COUNTY, Defendant–Appellee.**

No. 01–1995.

Court of Appeals of Iowa.

Dec. 11, 2002.

James Fisch and William Jahn, Jr. of Aspelmeier, Fisch, Power, Engberg & Helling, P.L.C., Burlington, for appellant.

Amy Snook, Assistant County Attorney, Burlington, for appellee.

Heard by SACKETT, C.J., and VAITHESWARAN and EISENHAUER, JJ.

**SACKETT, C.J.**

Appellant/cross-appellee, R.S. Fox, L.L.L.P. ("Fox"), appeals from the decision of the district court concerning the assessed valuation of certain buildings on its property. Fox claims (1) the court erred in admitting certain evidence and (2) the court's assessed value lacks a factual basis. Appellee/cross-appellant, the Board of Review of Des Moines County ("Board"), claims the court erred in not granting its motion for a directed finding. We affirm as modified on appeal and affirm on cross appeal.

**Background facts and proceedings**

Fox owns land in rural Des Moines County it operates as a private hunting preserve. It constructed a fourteen-bedroom hunting lodge totaling 12,000 square feet in 1999 at a cost of approximately $620,000. Fox built a metal utility building in 2000 at a cost of approximately $60,000. The property also contains a silo, a lean-to on the silo, and several other structures, which were on the land when Fox purchased it.

In 2000 Fox's property was assessed. The lodge was valued at $823,200, the utility building at $82,700, the silo at $4,900, the lean-to at $1,500, and a wooden deck at $15,000, for a total valuation of $992,300. Fox petitioned the Board for a reduction in the assessed valuation of these five structures. The valuation of the other structures is not at issue. The Board reduced the assessment of the utility building to $72,700, the silo to $1,500, the lean-to to $700, eliminated the deck because all agreed it no longer existed, but upheld the valuation of the lodge, for a total of $975,000. Fox appealed the Board's decision by filing a petition in equity in district court, alleging the correct valuation of the structures in question is $333,300.

In January 2001 the court filed its memorandum of the trial setting conference. In pertinent part, it set the trial for May 23, 2001, ordered disclosure of the Board's expert witnesses by April 16, and ordered discovery closed on April 23. On May 8 Fox filed a motion to preclude witnesses for the Board from testifying, based on the Board's failure to disclose expert witnesses and its failure to provide sufficient answers to interrogatories. The Board filed a motion to continue the trial and to extend discovery deadlines and a request for leave to designate expert witnesses. After a combined hearing on the parties' motions, the court found good cause for the Board's delay in discovery, allowed the Board to designate expert witnesses, ordered the Board to answer the interrogatories fully and accurately, and continued only that portion of the trial involving the Board's presentation of its evidence to give Fox time to depose the Board's experts and to receive its answers to interrogatories. Fox presented its case as scheduled on May 23. The Board presented its case on August 30. Fox objected to the Board's offer of an exhibit containing its

valuation records as hearsay and lacking foundation. The court stated it would rule on objections in its ruling. On November 13, the court issued its decision reducing the valuation of the lodge to $700,000 and affirming the Board's valuation of the other structures. Fox appeals and the Board cross appeals.

## Scope of review

■ Our review of equitable proceedings is de novo. Iowa R.App. P. 6.4; *see* Iowa Code § 441.39 (2001) (stating appeal to district court is in equity). We review the evidentiary decisions of the district court for an abuse of discretion. *In re Estate of Rutter,* 633 N.W.2d 740, 745 (Iowa 2001).

## Claims on appeal

*Fox.* First, Fox claims the court erred in admitting and considering the Board's Exhibit A, which was the property record of the County Assessor for Fox's property but which contained assessment valuations produced by Vanguard Appraisal Company. At trial Fox objected to the exhibit as hearsay and lacking foundation. The Board responded it was admissible under the public records exception to hearsay. The court did not rule on the objection, but cited data from the exhibit in its findings of fact.

Second, Fox contends the court's ruling lacks a factual basis in the record. It argues the court improperly discounted the unrefuted valuations presented by its experts and based its findings on assumptions and conclusions without evidentiary support. It argues the Board's witnesses testified they were not qualified to make valuations of the lodge and did not make their own appraisal of the lodge.

*Board.* Iowa Code section 441.21(3) places the burden of proof on Fox to demonstrate the assessed values were excessive. The Board contends the only evidence Fox presented of the assessed values was a comparison chart prepared by counsel for Fox. The Board argues Fox did not meet his burden of proof without any direct evidence of the valuations, so the court erred in denying the Board's motion for directed finding.

## Discussion

*Admissibility of Exhibit A.* The Board offered the County Assessor's property record for Fox's property as Exhibit A. Michael Anderson, the County Assessor, stated that the original valuation figures in the record were produced by Vanguard Appraisal Company, not his office. The figures were modified after the Board adjusted them on appeal. Anderson, in his deposition, testified what information is contained in property records maintained by his office. No one from Vanguard was called as a witness or deposed. None of the Board's witnesses provided any information about how Vanguard performs appraisals, what guidelines or manual Vanguard uses, why the lodge was classified as a "motel common facility," or the basis for the grade multiplier or depreciation figures. The last notation of any action by Vanguard in the exhibit is dated before the construction of the two buildings at issue. The court received the exhibit subject to Fox's hearsay and lack-of-foundation objections. It is apparent the court used the information in the exhibit in making its ruling.

The fighting issue for the hearsay objection is whether the property record qualifies as a public record or report under Iowa Rule of Evidence 5.803(8), one of the exceptions to the hearsay rule. Rule 5.803(8) provides:

(8) Public records and reports.

(A) To the extent not otherwise provided in rule 5.803(8)(B), records, reports, statements, or data compilations

in any form of a public office or agency setting forth its regularly conducted and regularly recorded activities, or matters observed pursuant to a duty imposed by law and as to which there was a duty to report, or factual findings resulting from an investigation made pursuant to authority granted by law.

(B) The following are not within this exception to the hearsay rule:

(i) Investigative reports by police and other law enforcement personnel.

(ii) Investigative reports prepared by or for a government, a public office or an agency when offered by it in a case in which it is a party.

(iii) Factual findings offered by the state or political subdivision in criminal cases.

(iv) Factual findings resulting from special investigation of a particular complaint, case, or incident.

(v) Any matter as to which the sources of information or other circumstances indicate lack of trustworthiness.

Rule 5.803(8)(B), however, shall not supersede specific statutory provisions regarding the admissibility of particular public records and reports.

Iowa R. Evid. 5.803(8).

■ Fox focuses on the language in the first part of paragraph (A) and argues the exhibit is not "records, reports, statements, or data compilations in any form of a public office or agency setting forth *its* regularly conducted and regularly recorded activities" because the data were produced by Vanguard Appraisal, not the Assessor, thus the exhibit does not reflect the "regularly conducted and regularly recorded activities" *of the assessor.* Fox also argues the exceptions to the exception in paragraphs (B)(ii) and (B)(iv) appear to apply. The usual application of those paragraphs is to reports and investigations

made by law enforcement agencies or at their behest. *See, e.g., State v. Curry,* 436 N.W.2d 371 (Iowa Ct.App.1988) (police field interview); *State v. Freiburger,* 443 N.W.2d 85 (Iowa Ct.App.1989) (fire marshal's list of incendiary fires); *State v. McCurry,* 544 N.W.2d 444 (Iowa 1996) (DNA reports).

The Board points to the language at the end of paragraph (A), "or matters observed pursuant to a duty imposed by law and as to which there was a duty to report, or factual findings resulting from an investigation made pursuant to authority granted by law." It argues section 441.17 imposes a duty on the Assessor to "cause to be assessed" all non-exempt property in the county. Iowa Code § 441.17(2). It is unclear from the text whether the observation or investigation must be made by the public office or agency in order to qualify for the exception. Section 441.17 also requires the Assessor to "[m]ake up all assessor's books and records," which can be understood as a duty to report. Iowa Code § 441.17(6).

In *Hunt v. State,* 252 N.W.2d 715 (Iowa 1977), the court admitted the Consumer Price Index, which is prepared by the United States Department of Labor's Bureau of Labor Statistics. *Id.* at 722. In *Henkel v. R and S Bottling Co.,* 323 N.W.2d 185 (Iowa 1982), the court refused to admit a report of the Bureau of Epidemiology of the United States Consumer Product Safety Commission entitled "Hazard Analysis of Carbonated Soft Drink Bottles." *Id.* at 193. In its analysis, the court compared this report with the Consumer Price Index admitted in *Hunt,* concluding the hazard analysis lacked the "indicia of reliability" of the Consumer Price Index. *Id.* In the case *sub judice,* there is no evidence of the reliability of the assessment valuations prepared by Vanguard. This appeal is similar to another appeal of

Vanguard's appraisal in *Valley Forge Apartments v. Board of Review of Johnson County*, 239 N.W.2d 148, (Iowa 1976). In *Valley Forge,* the court determined, "the Assessor and the Board relied almost exclusively on certain guidelines as to cost and other data prepared by its appraiser, Vanguard Appraisal Company, to the complete exclusion of evidence offered by Valley Forge and its witnesses." *Id.* at 150. The court noted:

> These guidelines were in the form of arbitrary amounts computed on the basis of the past experience of Vanguard Appraisal Company and used by it in numerous appraisals made by that company. They were not related to the property here involved, and, in fact, the evidence shows Vanguard Appraisal Company in "all cases" used its own schedules despite what evidence there might be to the contrary.

*Id.* Although there is no claim in this case that Vanguard used its own guidelines despite any evidence to the contrary, the record does not reveal how Vanguard arrived at its appraised valuations for the buildings in question. The County Assessor, Michael Anderson, did not know who from Vanguard made the appraisal or how the values were determined. Mitch Taeger, chief appraiser for Des Moines County, admitted he was not qualified to appraise the buildings in question. Richard Lowe, chair of the Board, did not inspect Fox's property for the purpose of determining its assessed value. Yet the district court accepted the figures in exhibit A over those presented by disinterested appraisers.

Based on our reading of the hearsay exception found in Iowa Rule of Evidence 5.803, we conclude Exhibit A does not qualify for the public record exception. Although the County Assessor's office maintains the property records, the data they contain are not a record of "its regularly conducted and regularly recorded activities, or matters observed pursuant to a duty imposed by law. . . ." Iowa R. Evid. 5.803(A). We also conclude no foundation was laid for introduction of the data in Exhibit A. The tacit admission of Exhibit A, as evidenced by its use in the court's ruling, was an abuse of discretion. Consequently, in our de novo review of the record to determine the proper assessed valuation of the structures in question, we do not consider Exhibit A.

*Factual basis for the district court's decision.* Fox raises a number of questions concerning the district court's findings. Under Iowa Code section 441.21(3), once Fox presented "competent evidence by at least two disinterested witnesses that the market value of the property is less than the market value determined by the Assessor, the burden of proof thereafter shall be upon the officials or persons seeking to uphold such valuation to be assessed." *Id.* There is no presumption the Assessor's valuation is correct. Iowa Code § 441.39.

The court found "Vanguard follows a procedure set forth in a state manual so that the appraisal process is uniform." No one testified about any state manual or what process Vanguard uses in appraising property. The designated expert from Vanguard was not called as a witness or deposed. In arriving at a replacement cost for the lodge, the court took Fox's cost of building it and then assumed an additional ten to twenty-five percent as a general contractor's fee. The court assumed the useful life of the lodge to be fifty years in calculating physical depreciation. No evidence in the record provides a basis for these assumptions. The evidence presented by both parties included at least a ten percent reduction in value for functional depreciation. The court did not believe functional depreciation applied to the

lodge. Much of the rest of Fox's argument revolves around the weight the court gave to the evidence from various witnesses, although Fox couches the argument in "lack of evidence" terms.

Section 441.21 provides various methods for determining the proper appraised value of property, which "shall be the fair and reasonable market value of such property except as otherwise provided in this section." Iowa Code § 441.21(1)(b). The market value ordinarily is the sale price "of the property or comparable property in normal transactions. . . ." *Id.* However,

> In the event market value of the property being assessed cannot be readily established in the foregoing manner, then the assessor may determine the value of the property using the other uniform and recognized appraisal methods including its productive and earning capacity, if any, industrial conditions, its cost, physical and functional depreciation and obsolescence and replacement cost, and all other factors which would assist in determining the fair and reasonable market value of the property but the actual value shall not be determined by use of only one such factor. The following shall not be taken into consideration: Special value or use value of the property to its present owner, and the good will or value of a business which uses the property as distinguished from the value of the property as property.

Iowa Code § 441.21(2).

◼ The Board argues Fox did not protest the assessment based on it being inequitable compared with other like properties in the county. Therefore, Fox has not preserved that ground for the district court's or our review. *See* Iowa Code § 441.38 (no new grounds). The Board asserts Fox is trying to bootstrap the comparable sales evidence into an "inequitable-with-comparable-properties" claim on appeal. However, evidence of comparable sales may be used as one means to prove the assessed value exceeds the value authorized by law. *Farmers Grain Dealers Ass'n v. Sather,* 267 N.W.2d 58, 61–62 (Iowa 1978). The Board points to evidence of earning capacity, building cost, replacement cost, and insurance coverage as supporting the court's determination of value under Iowa Code section 441.21(2).

◼ From our review of the record on appeal, we conclude there is insufficient evidence of value from comparable sales, therefore the alternate methods in subsection (2) must be used to arrive at the proper valuation. The lodge cost approximately $620,000 to build. The utility building cost approximately $60,000. The lodge and contents are insured for $1,000,000. That figure includes about $300,000 in furniture plus Fox's "lifetime of trophies." Based on the insurance, the replacement cost of the lodge itself would be less than $700,000. Although there is evidence of the cost of hunts, there is insufficient evidence concerning operating costs and a capitalization rate to calculate a value for the lodge based on its productive or earning capacity. We find $650,000 to be a reasonable value before any adjustments for physical, functional, and/or economic depreciation.

Fox claims the court erred in assuming a fifty-year life for the lodge in applying a two percent per year physical depreciation. Both the lodge and the utility building are practically new. The Govern appraisal makes no adjustment for physical depreciation. The Menke appraisal does not expressly consider depreciation, but merely gives a final value without explaining how that value was calculated. The Canfield appraisal lumps all adjustments together for a sixty-five percent reduction from the construction cost. We do not find evi-

dence of the useful life of the lodge or utility building. We make no adjustment for physical depreciation.

We also consider functional depreciation:

Functional depreciation aids in establishing the actual value by "taking into consideration the features that reduce the value of the building below what it would be from a physical standpoint."

Functional depreciation allows an assessor to give consideration to the fact that an "improvement may be out of proportion, in respect of size and cost of construction, to its location and surroundings and the general demand for property, and, if residential, it may have incorporated in it a number of features and fancies which, while adding greatly to its cost, add little or nothing to its market or selling value."

Without functional depreciation the replacement cost method of establishing the actual value would reflect only the replacement cost reduced by physical depreciation because of age and condition. A value established in this manner would not "take into consideration its productive and earning capacity, if any, past, present, and prospective, its market value, if any, and all other matters that affect the actual value of the property" as required by section 441.21.

*Dull v. County Bd. of Review, Plymouth County,* 260 Iowa 828, 832, 150 N.W.2d 91, 93–94 (1967). The Canfield appraisal reduced the value of the lodge by sixty-five percent for functional depreciation based on the limited potential buyers. The Govern appraisal reduced the value of the lodge by fifty percent for functional depre-

ciation[1] and an additional twenty-five percent for external depreciation.[2] It reduced the utility building's value by ten percent for each. In support of its reductions in the value of the buildings, the appraisal noted:

The lodge would suffer a large amount of functional depreciation as it is considered an over improvement. The lodge is used part time, sits in the middle of a large timber farm and would have little value if the existing use were to change.... The existing clubhouse, new barn, and new lodge would suffer from external depreciation as these improvements would be located far off the main roads and would be immediately worth less due to the location and intended use. These improvements are unique to the market area and would suffer external depreciation.

Although we agree the lodge is an over-improvement and its remote location and poor access could affect its sale value if not marketed as part of a hunting preserve, the fact remains that its current valuation should be as a new lodge on a hunting preserve. We disagree with Fox's argument this constitutes an improper consideration of special use. *See* Iowa Code § 441.21(2). The Board argues, and we agree, the lodge's remote location is by design. We find the total adjustments to the lodge of sixty-five and seventy-five percent to be excessive under the current circumstances. Considering the amount of over improvement and the probable small pool of potential buyers of such a lodge, we reduce the value of the lodge by thirty

---

1. The appraisal defined "functional depreciation" as "the perceived market reaction to under or over improvements in the desirability or utility of part or all of the improvement."

2. The appraisal defined "external obsolescence" as "a change in the value of a property, ... caused by forces outside the property itself. External factors may include physical location, infrastructure situation or economic conditions."

percent for functional depreciation. This gives an assessed valuation of $455,000.[3]

We believe the twenty percent reduction in the value of the utility building for functional and economic depreciation also is too high because, in contrast to the lodge, the utility building likely would be of just as much value to a prospective buyer even if used as part of a timber farm. We therefore apply a ten percent reduction to the value of the utility building. This gives an assessed valuation of $54,000.[4]

Fox contested the value of the silo and the lean-to in proceedings before the Board. It did not, however, present evidence at trial from two disinterested witnesses as to their value. Fox also does not argue or cite authority in its brief concerning the value of these two structures. We do not address any claim their valuation is incorrect. *See* Iowa R.App. P. 6.14(1)(*c* ).

*Denial of motion for directed finding.* The Board contends the court erred in denying its motion for directed finding at the close of Fox's case because Fox did not carry its burden to show the actual assessed values of the structures preparatory to showing the assessed values were excessive. The Board argues Fox only used a comparison chart prepared by its counsel from the Assessor's records and Fox's experts, which was offered as Exhibit 3 without foundation. Certainly, the Board offered evidence of the actual assessed valuation from the Assessor's records, but that evidence was not part of Fox's case.

Fox responds the Board did not appeal the admission of Exhibit 3, so it cannot claim lack of foundation or other defect. In addition, Fox argues the Board introduced evidence curing the defect in Fox's

case and the court must look to the whole record in passing on the sufficiency of the evidence. *See Winter v. Honeggers' & Co., Inc.,* 215 N.W.2d 316, 322–23 (Iowa 1974).

Our review of a denial of a motion for directed verdict or directed finding is limited to the grounds raised in the motion. *See Leaf v. Goodyear Tire & Rubber Co.,* 590 N.W.2d 525, 528 (Iowa 1999). In its motion for a directed finding, the Board only addressed each of the disinterested witnesses in asking the court "to consider all three witnesses as not competent, sufficient to shift the burden to the county in this matter." The motion made no mention of any failure to show the actual assessed valuations of the structures at issue. We conclude this claim was not preserved for our review and affirm the district court's tacit denial of the motion.

**Conclusion**

Considering only the evidence properly admitted, and for the reasons set forth above, we modify the assessed valuation of the lodge to $455,000 and the utility building to $54,000. We conclude the Board did not preserve its directed finding claim for our review. We have considered all the issues and arguments of the parties in their briefs. Any arguments not specifically addressed in this opinion are either covered by our resolution of the issues or are without merit.

**AFFIRMED AS MODIFIED ON APPEAL; AFFIRMED ON CROSS APPEAL.**

---

**3.** $650,000 minus (650,000 × 0.30 = 195,-000) equals $455,000.

**4.** $60,000 minus ten percent equals $54,000.